UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Edward Allen Rice, | ) | Case No. 05-13758 C-7G |
| | ) | |
| Debtor. | ) | |
| | ) | |

MEMORANDUM OPINION

This Chapter 7 case came before the court on May 23, 2006, for hearing on the Trustee's objection to the Debtor's claim for property exemptions. Jennifer F. Adams appeared on behalf of the Debtor and Martha R. Sacrinty appeared on behalf of the Trustee. For the reasons that follow, the court has concluded that the objection should be overruled.

JURISDICTION

The court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(B) which this court may hear and determine.

FACTS

The petition commencing this case was filed on October 12, 2005. On that date the Debtor was the owner of a policy of life insurance issued by Modern Woodmen of America. The policy provides a death benefit of $50,000.00 and had a cash surrender value of $4,168.22 as of the petition date. The Debtor originally claimed

the policy as exempt pursuant to Article X, Section 5 of the Constitution of North Carolina. The Trustee objected to such exemption on the grounds that the Debtor's mother was the beneficiary under the policy rather than a spouse or child of the Debtor, as required under the exemption contained in Article X, Section 5 of the North Carolina Constitution. The Debtor then amended his claim for property exemption to claim the $4,168.22 of cash surrender value as exempt pursuant to N.C. Gen. Stat. § 58-24-85 as "Fraternal Society benefits." The Trustee next filed the objection that is now before the court asserting that the $4,168.22 of cash surrender value could not be exempted by the Debtor because N.C. Gen. Stat. § 58-24-85 "does not extend to cash value or cash surrender value of life insurance policies."

ANALYSIS

It is undisputed that the policy of life insurance issued by Modern Woodmen of America is owned by the Debtor and that under the terms of the policy the Debtor has various rights, including the right to terminate the policy and receive the cash surrender value of the policy or assign the right to receive the cash surrender value. The Trustee argues that when this case was commenced, the rights of the Debtor under the policy became property of the estate pursuant to section 541 of the Bankruptcy Code and that he therefore is entitled to exercise Debtor's right to terminate the policy and bring the $4,168.22 of cash surrender proceeds into the

bankruptcy estate. In support of this argument, the trustee cites a number of cases in which a bankruptcy trustee was allowed to bring trust funds into the bankruptcy estate as a result of the debtor having control of the trust funds through a power to revoke or terminate the trust and receive the trust funds. See, e.g., Askanase v. Livingwell, Inc., 45 F.3d 103 (5th Cir. 1995)(debtor's power to terminate trust was property of bankruptcy estate and could be exercised by trustee to bring trust funds into estate); In re Marrama, 316 B.R. 418 (1st Cir. BAP 2004)(same); In re Ross, 162 B.R. 863 (Bankr. D. Idaho 1993)(same). However, being correct about whether the right of the Debtor to terminate the policy and receive the cash value proceeds constitutes property of the bankruptcy estate does not entitle the Trustee to prevail on his objection. The Trustee is still faced with the Debtor's claim that even if the cash value proceeds were brought into the estate, such proceeds may be exempted pursuant to N.C. Gen. Stat. § 58-24-85 and thereby removed from the estate. The determinative question therefore is not whether the rights of the Debtor under the policy constitute property of the estate, but whether the benefits that can be derived from such rights can be exempted which, in turn, depends upon whether N.C. Gen. Stat. 58-24-85 is applicable to the cash surrender proceeds that are available under the policy. If so, the Debtor is entitled to prevail. Accordingly, the focus must be upon N.C. Gen. Stat. § 58-24-85.

N.C. Gen. Stat. § 58-24-85 is found in Article 24 of Chapter 58 of the General Statutes of North Carolina. Article 24 is entitled "Fraternal Benefit Societies." A "fraternal benefit society" is defined in N.C. Gen. Stat. § 58-24-1.[1] The parties agree that Modern Woodmen of America falls within the statutory definition and is a fraternal benefit society for purposes of Article 24. It also is undisputed that the Debtor is a member[2] of Modern Woodmen of America and that the policy issued by Modern Woodmen of America to the Debtor is a benefit contract[3] which is subject to the provisions of Article 24. It follows that N.C. Gen. Stat. § 58-24-85 is applicable in this case and may be invoked by the Debtor.

The question that remains is whether N.C. Gen. Stat.

---

[1]The definition of "fraternal benefit society" is as follows:

> Any incorporated society, order or supreme lodge, without capital stock, including one exempted under the provisions of G.S. 58-24-185(a)(2) whether incorporated or not, conducted solely for the benefit of its members and their beneficiaries and not for profit, operated on a lodge system with ritualistic form of work, having a representative form of government, and which provides benefits in accordance with this Article, is hereby declared to be a fraternal benefit society.

[2]Under N.C. Gen. Stat. § 58-24-15(b), a "benefit member" is defined as "an adult member who is designated by the laws or rules of the society to be a benefit member under a benefit contract."

[3]Under N.C. Gen. Stat. § 58-24-15(a), a "benefit contract" is defined as "the agreement for provision of benefits authorized by G.S. 58-24-75, as that agreement is described in G.S. 58-24-90(a).

§ 58-24-85 may be utilized to exempt the proceeds payable as the cash surrender value of Debtor's policy. The first step in answering this question is to examine N.C. Gen. Stat. § 58-24-85, which is entitled "Benefits not attachable" and contains the following language:

> No money or other benefit, charity, relief or aid to be paid, provided or rendered by any society, shall be liable to attachment, garnishment or other process, or to be seized, taken, appropriated or applied by any legal or equitable process or operation of law to pay any debt or liability of a member or beneficiary, or any other person who may have a right thereunder, either before or after payment by the society.

Under this language, "money or other benefit" to be paid by a fraternal benefit society is not "liable to attachment, garnishment or other process, or to be seized, taken, appropriated or applied by any legal or equitable process or operation of law to pay any debt or liability of a member or beneficiary, either before or after payment by the society." The effect of immunizing property interests from attachment, garnishment or other process to pay the debts of the owner of such property is to make such property interests exempt even though such property interest is not included in N.C. Gen. Stat. § 1C-1601. See In re Hare, 32 B.R. 16 (Bankr. E.D.N.C. 1983). The property interests immunized and made exempt by N.C. Gen. Stat. § 58-24-85 include "money or other benefit . . . to be paid, provided or rendered by any [fraternal benefit] society." Contrary to the argument of the Trustee, the court

concludes that the cash surrender value of Debtor's policy does fall within the foregoing language of N.C. Gen. Stat. 58-24-85[4] and therefore is exemptible.

In reaching the conclusion that the Debtor is entitled to exempt the cash surrender value payable under the policy, the court rejects the Trustee's argument that the cash surrender value payable under the policy is not a "benefit" under the policy and hence not within the exemption. As a fraternal benefit society, Modern Woodmen of America is empowered by N.C. Gen. Stat. § 58-24-20 to provide to its members "benefits as specified in G.S. 58-24-75 . . . ." N.C. Gen. Stat. § 58-24-75 describes the benefits that may be provided by a fraternal benefit society as follows:

> (a) A society may provide the following contractual benefits in any form:
> (1) Death benefits;
> (2) Endowment benefits;
> (3) Annuity benefits;
> (4) Temporary or permanent disability benefits;
> (5) Hospital, medical or nursing benefits;
> (6) Monument or tombstone benefits to the memory of deceased members; and
> (7) Such other benefits as authorized for life insurers and which are not inconsistent with this Article.

---

[4]The same conclusion was reached in In re Tveten, 402 N.W.2d 551 (Minn. 1987), regarding the cash surrender value of a policy issued by a fraternal benefit society and a Minnesota statute nearly identical to N.C. Gen. Stat. § 58-24-85, although the Minnesota statute ultimately was held unconstitutional pursuant to a provision in the Constitution of Minnesota that is not found in the Constitution of North Carolina.

Pursuant to subparagraph (7) of the above statute, a fraternal benefit society is authorized to provide the "other benefits" which are authorized for life insurers and which are not inconsistent with Article 24. "Other benefits" is not a term that is defined in Article 24 or elsewhere in Chapter 58 of the General Statutes. Nevertheless, the court is satisfied that cash surrender value is such a benefit. Absent a statutory definition, it is appropriate for the court to give the words of a statute their commonly accepted meaning. See Anderson v. Babb, 632 F.2d 300, 308 (4th Cir. 1980). One of the definitions of "benefit" and a commonly understood meaning of that word is "payments made by an insurance company, public agency, welfare society, etc." Webster's New Twentieth Century Dictionary, 172 (2nd ed. 1972). The payment of the proceeds of the cash surrender value of a life insurance policy would certainly seem to qualify as a "payment by an insurance company," particularly given the well established rule in North Carolina that exemptions are to be liberally construed. See Elmwood v. Elmwood, 244 S.E.2d 668, 678 (N.C. 1978).

A further indication that cash surrender value is a benefit authorized for both life insurers and fraternal benefit societies is found in N.C. Gen. Stat. § 58-24-95. As indicated in its title, this statute establishes guidelines for fraternal benefit societies to offer "Nonforfeiture benefits, cash surrender values [and] certificate loans." (Emphasis supplied). For certain fraternal

benefit society policies issued after January 1, 1988, N.C. Gen. Stat. § 58-24-95(b) requires that "every paid-up nonforfeiture benefit and the amount of any cash surrender value, loan or other option granted shall not be less than the corresponding amount ascertained in accordance with the laws of this State applicable to life insurers issuing policies providing like benefits based upon such tables." (Emphasis supplied). The wording of this statute clearly reflects a recognition by the Legislature that cash surrender value is a "benefit" that may be offered in the policies of both fraternal benefit societies and life insurers.

The Trustee argues that cash surrender value is not a "benefit" that is authorized for life insurers and therefore is not authorized for fraternal societies by N.C. Gen. Stat. 58-24-75(a)(7). The Trustee bases this argument upon N.C. Gen. Stat. 58-24-15. Section 58-24-15 describes the kinds of insurance that may be issued in North Carolina, and includes life insurance among the authorized kinds of insurance. Subparagraph (1) of N.C. Gen. Stat. 58-24-15 then states that the business of life insurance "includes" certain benefits which are listed in subparagraph (1), but which do not include cash surrender value. This omission is the heart of the Trustee's argument. However, the use of the word "includes" makes it clear that the listing in N.C. Gen. Stat. § 58-24-15(a) is not an exclusive listing of the benefits authorized for life insurers and therefore does not limit the business of life insurance to the

benefits mentioned in subparagraph (1). See N.C. Turnpike Auth. v. Pine Island, Inc., 143 S.E.2d 319, 327 (N.C. 1965)("The term 'includes' is ordinarily a word of enlargement and not of limitation."). Moreover, Chapter 58 is replete with statutory references reflecting that cash surrender value is a benefit authorized for life insurers. E.g., N.C. Gen. Stat. § 58-58-22(b); § 58-58-55(b) and (c). The Trustee's interpretation also ignores the underlying premise of N.C. Gen. Stat. 58-24-95 that both life insurers and fraternal societies may offer a cash surrender benefit and the requirement in that statute that the cash surrender value offered by fraternal societies be comparable to that offered by life insurers. The Trustee's argument that cash surrender value is not a benefit authorized by N.C. Gen. Stat. § 58-25-75 for fraternal benefit societies therefore is rejected.

CONCLUSION

Based upon the foregoing findings and conclusions, the court concludes that the Debtor is entitled to exempt the cash surrender value of his Modern Woodmen of America policy pursuant to N.C. Gen. Stat. 58-24-85 and that the Trustee's objection therefore should be overruled. An order so providing is being entered contemporaneously with the filing of this memorandum opinion.

This 21st day of June, 2006.

William L. Stocks

WILLIAM L. STOCKS
United States Bankruptcy Judge

PARTIES IN INTEREST

Jennifer F. Adams, Esq.
P.O. Box 20570
Greensboro, NC 27420-0570

Martha R. Sacrinty, Esq.
P.O. Box 989
Greensboro, NC 27402